1   KATHLEEN M. LUCAS (Bar No. 80339)
    SHAWNA B. CASEBIER (Bar No. 267782)
2   THE LUCAS LAW FIRM
    180 Montgomery Street, Suite 2000
3   San Francisco, California 94104
    Tel: (415) 402-0200
4   Fax: (415) 402-0400
    klucas@lucaslaw.net
5   scasebier@lucaslaw.net

6   Attorneys for Plaintiff
    S. ZODY

7

8                        UNITED STATES DISTRICT COURT

9                      NORTHERN DISTRICT OF CALIFORNIA

10                            OAKLAND DIVISION

11

12

13  S. ZODY                              Case No.: CV 12-0942 YGR
                    Plaintiff,
14                                       **SECOND AMENDED COMPLAINT FOR
         vs.                             DAMAGES; DEMAND FOR JURY TRIAL**
15
    MICROSOFT CORPORATION AND            1)  EMPLOYMENT DISCRIMINATION: GENDER,
16  DOES 1-25, INCLUSIVE,                    CAL. GOV'T CODE §§ 12940, ET SEQ., "FEHA;"
                                         2)  HARASSMENT: GENDER, CAL. GOV'T CODE
17                  Defendants.              §§ 12940, ET SEQ., "FEHA;"
                                         3)  RETALIATION IN VIOLATION OF CAL. GOV'T
18                                           CODE §§ 12940, ET SEQ., "FEHA;"
                                         4)  FAILURE TO PREVENT AND/OR REMEDY
19                                           DISCRIMINATION, HARASSMENT AND
                                             RETALIATION IN VIOLATION OF CAL. GOV'T
20                                           CODE §§ 12940, *ET SEQ.*, "FEHA;"
                                         5)  BREACH OF CONTRACT;
21                                       6)  BREACH OF THE IMPLIED COVENANT OF GOOD
                                             FAITH AND FAIR DEALING; AND,
22                                       7)  CONSTRUCTIVE DISCHARGE IN VIOLATION OF
                                             PUBLIC POLICY.
23

24

25

26

27

28

                                      1
                                                          SECOND AMENDED COMPLAINT
                                                          CV 12-0942 YGR

Plaintiff S. ZODY hereby alleges:

## JURISDICTION

1.      Jurisdiction over this action is based on diversity pursuant to 28 U.S.C. § 1332(a).

## VENUE

2.      This action originally brought in the Superior Court of the State of California, County of San Francisco, and venue thus lies in the Northern District of this Court, Oakland Division, pursuant to 28 U.S.C. sections 1441, 1446(a) and 84(a) and Northern District Local Rule 3-2(c), (d).

## PARTIES

3.      S. ZODY (hereinafter, "ZODY" or "Plaintiff"), at all relevant times mentioned herein, was, and is, a resident of the State of California. ZODY was employed as West Region Business Manager of Defendant MICROSOFT CORPORATION.

4.      MICROSOFT CORPORATION (hereinafter, "MICROSOFT," "the company," "Defendant" or included in "Defendants") is a publicly traded, multinational corporation that develops, manufactures, licenses, and supports a wide range of products and services predominantly related to computing. MICROSOFT is registered to do business in the State of California and does business throughout the State of California. MICROSOFT maintains offices in the City and County of San Francisco, State of California.

5.      Defendants DOES 1-25 are sued herein under fictitious names. Their true names and capacities are unknown to Plaintiff.  Plaintiff is informed and believes and thereon alleges that each of these fictitiously named Defendants is responsible in some way for the occurrences herein alleged and Plaintiff's damages as herein alleged were caused by Defendants. Plaintiff will seek leave of court to provide the true identities of DOES 1-25 when they become known.

6.      Plaintiff is informed and believes, and based on that information and belief alleges, that at all relevant times herein, each of the Defendants and DOES 1-25 was the agent, alter-ego, joint employer, ostensible agent for, employee of, and/or joint venturer with, or working in concert with, his/her co-defendants and was acting within the course and scope of such agency, employment and/or joint venture or concerted activity. To the extent that said conduct was

perpetrated by certain Defendants, the remaining Defendants and DOES confirmed, adopted, approved, and/or ratified the same.

### FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

7.      Plaintiff is a female.

8.      Plaintiff was hired by MICROSOFT in 2000.

9.      Based on information and belief, MICROSOFT has a pattern and practice of treating female employees differently than male employees in the terms and conditions of their employment.

10.      MICROSOFT has a written Anti-Harassment and Anti-Discrimination Policy that establishes "…zero tolerance for prohibited discrimination, harassment, intimidation or retaliatory conduct." As part of this policy, MICROSOFT addresses the lodging of internal complaints by employees experiencing "…harassing, discriminatory or retaliatory conduct."  In June 2011, Plaintiff lodged a complaint pursuant to these policies with Human Resources. Specifically, she complained about the harassing, intimidating and discriminatory actions to which she was being subjected by her manager, the Regional Vice President. Thereafter, Human Resources representatives spoke with Plaintiff on several occasions about her complaint and the treatment to which she was being subjected by the Regional Vice President. Despite these discussions, Human Resources failed and/or refused to initiate an investigation or correct the situation Plaintiff reported to them.

11.      MICROSOFT's written policy is entitled "Internal Complaint Procedure." The policy states that MICROSOFT has in place "HR professionals trained to promptly conduct unbiased investigations when complaints are raised" by employees experiencing "…harassing, discriminating or retaliatory conduct." Under this policy, notice to the manager or Human Resources representative is sufficient.  Thus, internal complaints can be submitted verbally or in writing. Nevertheless, after receiving Plaintiff's complaint in June 2011 MICROSOFT's Human Resources representatives failed and/or refused to initiate the Internal Complaint Procedure to correct the situation.

12.     On September 19, 2011, five female colleagues employed in the same division at MICROSOFT filed an internal complaint of gender discrimination with MICROSOFT against the Regional Vice President and his subordinate, the General Manager Enterprise Business. The group's complaint of gender discrimination was supplemented in a second, though similar, complaint in October 2011.

13.     Both complaints stated that Plaintiff had "…experienced mistreatment and gender discrimination while working for [the Regional Vice President]."

14.     Both complaints stated: "We understand her [S. Zody] situation to be very similar to our documented experiences and we believe her current investigation should be reviewed as part of this CONCERTED EFFORT."

15.     Eventually, Plaintiff was interviewed by the investigator, who, trained as a lawyer, was an employee of MICROSOFT. Despite Plaintiff being told that the investigation of the September 2011 internal complaint would be completed in two weeks, it was not completed between September 2011 and January 12, 2012. Despite Plaintiff's repeated inquiries, MICROSOFT failed and/or refused to remedy or correct the situation during that time. Further, none of the other complainants were ever asked about their knowledge or observations regarding the treatment of Plaintiff.

16.     Plaintiff filed this lawsuit in state court on January 13, 2012.

17.     Following the filing of this lawsuit, Plaintiff received first an oral summary and then a written summary of the investigative findings in a memorandum dated January 16, 2012, that was addressed only to her. At no time was Plaintiff permitted to discuss the investigator's findings with the investigator.

18.     From the time she was hired by MICROSOFT and prior to the actions complained about in this lawsuit, Plaintiff was repeatedly recruited for promotions within different divisions of MICROSOFT. To accept these positions, she relocated to five different cities within the United States over the more than ten years she worked there.

19.     She was recruited for new positions because over the course of Plaintiff's career at MICROSOFT, she consistently exceeded the goals assigned to her. Prior to the actions

4

complained about in this lawsuit, Plaintiff was consistently rewarded with promotions and increased compensation for exceeding the goals assigned to her.

20.     Prior to reporting to the Regional Vice President and prior to the actions complained about in this lawsuit, Plaintiff was consistently ranked a top performer across all of the divisions she worked.  She was the recipient of multiple MICROSOFT "Gold Star" Awards during her tenure. In 2010, she was awarded a special two month sabbatical called the Microsoft Achievement Award for exemplary performance.

21.     Plaintiff was recruited for the job of West Region Business Manager responsible for California, reporting to the Regional Vice President effective October 22, 2010.

22.     As reported to Human Resources on many occasions and as described in further detail below, Plaintiff was subjected to harassing and discriminatory actions on the basis of her gender, female, by the Regional Vice President. His conduct and actions interfered with her ability to do her job and affected the terms and conditions of her employment.  Based on information and belief, his conduct and actions would, and did, offend other reasonable female employees of ordinary sensibilities who worked in the same workplace.

23.     In or about March 2011, the Regional Vice President told Plaintiff words to the effect that she was "useless" and "irrelevant." He told also her that she should look for another position. Following this discussion, Plaintiff sought out numerous positions but was not hired into any of them. She contacted Human Resources and asked them for assistance in getting another position, but they failed and/or refused to facilitate a transfer or reassignment.

24.     After reporting the conduct and actions of the Regional Vice President to Human Resources on a number of occasions as described in this Complaint, her manager continued to subject Plaintiff to additional harassing, discriminatory and retaliatory conduct. His conduct and actions continued to interfere with her ability to do her job, affected the terms and conditions of her employment, and ultimately resulted in a constructive termination from her position.  She reported this conduct to Human Resources representatives who did nothing in response.

25.     As described in further detail below, based on information and belief, others observed his conduct toward Plaintiff. Based on information and belief, his conduct and actions offended

1   others who, like the other female complainants, raised their concerns about his behavior with

2   Plaintiff and Human Resources.

3   26.     Defendants, including the Regional Vice President, treated Plaintiff, a female, differently

4   than other similarly situated male employees who complained about harassment and/or

5   discrimination in the terms and conditions of their employment.

6   27.     Despite outperforming similarly situated males, on Plaintiff's last performance review

7   conducted in August 2011, the Regional Vice President unfairly ranked her lower than the

8   performance of other similarly situated males, and lower than the results that her performance

9   warranted as compared to others.

10  28.     The Regional Vice President harassed and discriminated against Plaintiff on the basis of

11  her gender, female.

12  29.     He regularly subjected Plaintiff in private and in public to demeaning, abusive, gender-

13  based criticism that offended her. This conduct interfered with Plaintiff's ability to perform her

14  duties and, based on information and belief, was observed by others of ordinary sensibilities who

15  were also offended by his conduct.

16  30.     On a daily basis, Plaintiff received rude and abrupt emails from the Regional Vice

17  President. When she asked him to treat her with respect, he ignored her requests.

18  31.     On a weekly basis, the Regional Vice President would yell at Plaintiff and belittle her

19  both privately and publicly.

20  32.     Routinely, in meetings with other managers, the Regional Vice President would act

21  belligerently and condescendingly toward Plaintiff. His openly demeaning and inappropriate

22  treatment of Plaintiff interfered with her performance of her duties and caused her emotional

23  distress. Based on information and belief, this behavior was observed by others of ordinary

24  sensibilities who were also offended by his conduct; they raised their concerns with Human

25  Resources who failed and/or refused to address or remedy the situation.

26  33.     Routinely, the Regional Vice President blamed Plaintiff for errors or omissions that were

27  not errors and/or were not her fault. Then, later, he used the false allegations to deny Plaintiff

28

bonuses, stock and other compensation while awarding them to similarly situated and/or less productive and/or less qualified male employees.

34.     In meetings, Plaintiff's manager was regularly dismissive of her contributions to MICROSOFT. Other similarly situated males' contributions were not similarly dismissed or criticized. For example, when Plaintiff presented an idea in a staff meeting, her manager routinely ignored Plaintiff's ideas, but when a male presented the very same idea her manager would call them "brilliant."

35.     Based on information and belief, MICROSOFT, as a federal contractor, and a California employer, is subject to regulations that require the implementation of equal employment opportunity in all aspects of employment. In implementing its duties, Microsoft has policies that address diversity in the workforce. In or about December 2010 and again in February 2011, when questions arose about diversity issues in the Plaintiff's division, as the West Region's Business Manager, she raised these issues with the Regional Vice President. In response he told Plaintiff that diversity measures within MICROSOFT as related to gender were "not important" and a "waste of time" and he refused to change any of his decisions.

36.     In or about April 2011, after Plaintiff initiated an in-person meeting to discuss his treatment of her and the poor communication between them, the Regional Vice President admitted to Plaintiff that he has a problem dealing with women.

37.     At the conclusion of the meeting in April 2011 which took place at MICROSOFT's offices, Plaintiff's manager then invaded her personal space, pulled back Plaintiff's jacket, touched Plaintiff's stomach and then made a comment about Plaintiff not needing to worry about her weight. Plaintiff was offended by his actions and felt violated by this inappropriate behavior by her manager.

38.     In or about June 2011, when Plaintiff again approached the Regional Vice President and raised her concerns about how she was being treated by him, he reiterated to Plaintiff with words to the effect that he "does not deal well with females."

39.     Based on information and belief, other female employees within MICROSOFT have also been yelled at by Plaintiff's manager in a demeaning, loud and public manner for little or no reason, while males have not been subjected to this abusive behavior.

40.     After much discussion, in August 2011, Plaintiff received a downgraded performance rating from the Regional Vice President even though she had surpassed all of the performance goals assigned to her for fiscal year 2011.

41.     Based on information and belief, MICROSOFT requires its managers to follow a bell curve distribution model in providing annual performance ratings to its employees. The model requires that only 20% of employees receive the highest rating of "1," 20% receive a "2," 40% receive a "3," 13% receive a "4," and 7% receive the lowest rating of "5." Based on information and belief, the ratings are to reflect the environment in which results were achieved and the impact of an individual's performance relative to peers on the team. Based on information and belief, managers use criteria other than legitimate business reasons in calibrating the ratings.

42.     Based on information and belief, the rating an employee receives determines the extent to which an employee's salary will be increased, and bonuses and stock options distributed. Further, an employee's rating has a direct impact on the ability of an employee obtain promotions and other positions within MICROSOFT.

43.     Based on information and belief, a rating of a "1" or "2" is to reflect "greatly surpassing expectations" and "surpassing expectations," respectively. A rating of a "3" is to reflect "successfully delivering against expectations."

44.     Despite meeting all of her goals and without providing any rationale, initially, the General Manager Enterprise Business, without adequate explanation, told Plaintiff that the Regional Vice President intended to rate her as the "token 5" within her group. In response to receiving this information, Plaintiff initiated several discussions with her manager about the unfairness of such a rating given Plaintiff's exceptional performance throughout the year. The Regional Vice President became very angry at Plaintiff for raising this concern. In the end, Plaintiff's overall rating was lower than it had been for the many years before. Plaintiff received the rating of "3."

45.     Based on information and belief, Plaintiff's performance, as compared to others, was deserving of a rating of "2" or better.

46.     Due to the actions and behavior of the Regional Vice President, including the unfair and undeserved performance ranking, Plaintiff's ability to transfer out of her position and pursue her career at MICROSOFT became severely restricted. Additionally, she was denied additional increases in her base salary, bonus amounts, and stock options to which she otherwise would have been entitled.

47.     In September 2011, Plaintiff elected to and received approval to take her earned two month merit sabbatical that is awarded to exceptional performers. Before leaving for sabbatical, Plaintiff was again berated by her manager. This time, he criticized her for taking the sabbatical and for not being available to work during the duration of the sabbatical. Based on information and belief, other similarly situated males have not been similarly berated about taking their earned sabbaticals.

48.     In September 2011, when the internal complaint was filed on behalf of the five females, Plaintiff's colleagues wrote that Plaintiff who was on sabbatical had "…experienced mistreatment and gender discrimination while working" for the Regional Vice President. However, when the investigation was conducted, the other women were not interviewed about their knowledge and/or observations of the Regional Vice President's mistreatment of Plaintiff or other females even though they worked in the same division and had regular contact with him.

49.     Having received no report on the company's investigation by November 2011, Plaintiff timely filed a complaint with the California Department of Fair Employment and Housing ("DFEH") and received the "Right to Sue." The Complaint of Discrimination and the Right to Sue letter have been served on MICROSOFT.

50.     Despite MICROSOFT receiving notice through the internal and external complaints of discrimination and harassment, and despite the investigator's finding the Regional Vice President to be "rude" and "brusque," MICROSOFT failed to alter or correct the situation for Plaintiff, or to assure Plaintiff that she had a workplace free of harassment, intimidation, and/or retaliation.

51.     MICROSOFT's failure to conduct a thorough investigation and its failure to take prompt action to correct the discriminatory and harassing work environment resulted in Plaintiff's inability to work in an environment free of harassment, abuse, and discrimination. As a result of MICROSOFT'S failure to act within the law and its policies, Plaintiff was on an extended leave of absence until January 23, 2012. Without being able to transition into another position, Plaintiff had no work. This situation prompted colleagues and coworkers to inquire into her situation. As a result, she suffered further damage to her reputation and to her ability to work successfully at MICROSOFT.

52.     At the conclusion of the inadequate investigation, MICROSOFT directed Plaintiff to continue reporting to the Regional Vice President despite acknowledging that he treated her in an unprofessional, "rude" and "brusque" manner. Microsoft failed to correct and/or remedy Plaintiff's working conditions, and, therefore, the intolerable working conditions continued once she returned.

53.     When Plaintiff returned to her position in January 2012, the harassment had not ceased. For example, within days of her return, the Regional Vice President blamed her for problems that had occurred while she was on sabbatical. When she presented MICROSOFT with this conduct, again, MICROSOFT failed to either investigate the issue or implement its policies of zero tolerance for such conduct.

54.     MICROSOFT did not take any concrete steps to ensure that Plaintiff's manager did not retaliate against her for lodging her complaints against him. MICROSOFT continued to permit the intolerable working conditions to exist without remedying the situation.

55.     Other than a few platitudes, MICROSOFT took no steps to ensure that Plaintiff would not be subjected to gender harassment, discrimination or retaliation for having filed the complaints.

56.     Shortly after Plaintiff's return to work, the Regional Vice President immediately resumed his harassment of her by sending her an angry email unjustifiably blaming her for projects that were already behind their proposed due dates.

10

57.     Plaintiff reported these unfair and intimidating accusations to Human Resources, but again MICROSOFT failed and/or refused to act even though its policies required an investigation.

58.     Plaintiff considered MICROSOFT's continued failure to correct the situation and her manager's conduct toward her as acts of retaliation.

59.     On February 7, 2012, Plaintiff was constructively terminated from her position due to the intolerable working conditions.

60.     On February 7, 2012, Plaintiff timely filed a second Complaint with the California Department of Fair Employment and Housing ("DFEH") and received the "Right to Sue." The Complaint of Discrimination and the Right to Sue letter have been served on MICROSOFT.

61.     At all relevant times, Plaintiff has been ready, willing, and able to perform the duties of her position as West Region Business Manager, as well as to transfer to and perform the duties of another position of equal or higher grade level, requiring similar skills and experience.

62.     Plaintiff in good faith performed all of the obligations of her employment, except to the extent that she was prevented from doing so by Defendants and their agents.

63.     As a consequence of Defendants' actions, Plaintiff has suffered, and continues to suffer, general and special damages, including lost salary, benefits, bonuses, other employee benefits, lost career opportunities, and loss of reputation.

64.     As a further consequence of Defendants' actions, Plaintiff has suffered, and continues to suffer, extreme anguish, humiliation, and emotional distress.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## FIRST CAUSE OF ACTION
### (Discrimination Based on Gender under FEHA)

65.     Plaintiff hereby incorporates by reference paragraphs 1 through 64, inclusive, of this Complaint as though fully set forth herein.

66.     This cause of action is brought pursuant to California Government Code §§12900, *et seq.*, and the common law of the State of California, which prohibit discrimination in employment on the basis of gender.

67.     At all relevant times, MICROSOFT was, and is, a corporation subject to suit under the California Fair Employment and Housing Act, Cal. Gov't Code § 12940, *et seq.* (hereinafter "FEHA") and the common law of the State of California, in that it is a business with five or more employees doing business in the State of California.

68.     Plaintiff timely filed two Complaints with the California Department of Fair Employment and Housing ("DFEH").  Plaintiff received a Plaintiff's "Right to Sue" from the DFEH. Both Complaints of Discrimination and the Right to Sue letters have been served on Defendants and Plaintiff timely files this action.

69.     Plaintiff alleges that her gender was a determining factor in the terms and conditions of her employment. Similarly-situated male employees have not been subjected to the same or similar unfavorable treatment.

70.     MICROSOFT discriminated against Plaintiff because of her gender in, but not limited to, the following ways:

    a.   Plaintiff was treated differently than other similarly situated males in the terms and conditions of her employment;

    b.   Plaintiff was held to higher performance standards than other similarly situated males;

    c.   Despite outperforming other similarly situated males, Plaintiff was ranked lower than other similarly situated males on her last annual performance review, all to Plaintiff's detriment;

    d.   MICROSOFT did nothing to prevent, remedy or correct the discrimination before or after receiving both the internal complaint and the DFEH complaint;

    e.   Plaintiff was not provided with a workplace free of discrimination, harassment and retaliation; and,

    f.   Plaintiff was constructively terminated from her position.

71.     As a direct and proximate result of MICROSOFT's unlawful conduct as herein alleged, Plaintiff has suffered and continues to suffer general and special damages, including lost salary, benefits, bonuses, other employee benefits, lost career opportunities, and loss of reputation, in an

amount in excess of the jurisdictional minimum of this Court, the precise amount to be proven at trial.

72.     As a further, direct and proximate result of MICROSOFT's unlawful conduct, Plaintiff has suffered and continues to suffer extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time and the amount of damages not yet fully ascertained but in excess of the jurisdiction of this Court, the precise amount to be proven at trial.

73.     The conduct of MICROSOFT, its agents, and employees as described herein was oppressive, fraudulent, and malicious, thereby entitling Plaintiff to an award of punitive damages against MICROSOFT in an amount appropriate to punish and make an example of Defendants.

      **WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

<u>**SECOND CAUSE OF ACTION**</u>
**(Harassment Based on Gender in Violation of FEHA)**

74.     By this reference, Plaintiff hereby incorporates paragraphs 1 through 73, inclusive, of this Complaint as if set forth herein.

75.     This cause of action is brought pursuant to California Government Code §§12940, *et seq.*, and the common law of the State of California.

76.     At all times relevant hereto, MICROSOFT was, and is, a corporation, which employed 5 or more persons, engaged in an industry affecting commerce, bringing it within the provisions of California Government Code §§12900, *et seq.*, and the common law of the State of California, which prohibit employers from harassing an employee on the basis of an employee's gender.

77.     Plaintiff timely filed two Complaints with the California Department of Fair Employment and Housing ("DFEH") against MICROSOFT.  Plaintiff received a Plaintiff's "Right to Sue" from the DFEH.  Both Complaints of Harassment and the Right to Sue letters have been served on the Defendants and Plaintiff timely files this action.

78.     The Regional Vice President has a pattern and practice of refusing to participate in or support corporate diversity related initiatives within MICROSOFT.

79.     The Regional Vice President regularly indicated to Plaintiff that diversity measures within MICROSOFT as related to gender were "not important."

80.     Defendants, including the Regional Vice President engaged in, but not limited to, the following actions with the intent of harassing Plaintiff on account of her gender and communicating a hostile message to her because of her gender:

    a.  Making gender based assumptions about Plaintiff's ability to do her job;

    b.  Demeaning Plaintiff and acting condescending toward Plaintiff on a regular basis in private and public meetings because of her gender, female. Plaintiff was humiliated by this treatment from her manager. She was approached by other co-workers who commented to Plaintiff how inappropriately she was being treated by her manager;

    c.  Criticizing Plaintiff for not working during her prescheduled and pre-approved sabbatical, while male employees were not similarly criticized for not working during their sabbaticals;

    d.  Inappropriately touching Plaintiff and commenting on her body;

    e.  Routinely dismissing Plaintiff's contributions and expertise while deferring to and embracing the same ideas from similarly situated, less qualified males;

    f.  Routinely communicating with Plaintiff in a rude and abrupt manner;

    g.  By not undertaking steps, temporarily or permanently, to prevent, correct or remedy the situation after MICROSOFT was given both internal notice of the discrimination and harassment as well as notice by way of the DFEH complaint; and,

    h.  Constructively terminating Plaintiff from her position.

81.     The following actions committed by Defendants further communicated a demeaning, hostile message to Plaintiff on the basis of her gender:

    a.  Plaintiff was treated differently than other similarly situated males in the terms and conditions of her employment;

    b.  Plaintiff was held to higher performance standards than other similarly situated males;

    c.  Despite outperforming other similarly situated males, Plaintiff was ranked lower than other similarly situated males on her last annual performance review, all to Plaintiff's detriment;

    d.  MICROSOFT did nothing to prevent, remedy or correct the discrimination before or after receiving both the internal complaint and the DFEH complaint;

    e.  Plaintiff was not provided with a workplace free of discrimination, harassment and retaliation; and,

    f.  Plaintiff was constructively terminated from her position.

82.    In June 2011, Plaintiff approached the Regional Vice President and raised her concerns about how she was being treated by him. At this time, he admitted to Plaintiff with words to the effect that he "does not deal well with females."

83.    Based on information and belief, other female employees within MICROSOFT have been yelled at by the Regional Vice President loudly and publicly for little or no reason. Other similarly situated male employees have not been similarly subjected to this verbal abuse.

84.    The managers and agents of MICROSOFT did the above acts or knew, or should have known, of the above-mentioned harassment, but MICROSOFT failed to take immediate and appropriate corrective action to stop the harassment and to remedy the situation. MICROSOFT also failed to take all reasonable steps to prevent such harassment from occurring.

85.    As a direct and proximate result of MICROSOFT's unlawful conduct as herein alleged, Plaintiff has suffered, and continues to suffer, general and special damages, including lost salary, benefits, bonuses, other employee benefits, lost career opportunities, and loss of reputation, in an amount in excess of the jurisdictional minimum of this Court, the precise amount to be proven at trial.

86.    As a further, direct and proximate result of MICROSOFT's unlawful conduct, Plaintiff has suffered, and continues to suffer, extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time and the amount of damages not yet fully ascertained but in excess of the jurisdiction of this Court, the precise amount to be proven at trial.

15

87.     The conduct of MICROSOFT, its agents, and employees as described herein was oppressive, fraudulent, and malicious, thereby entitling Plaintiff to an award of punitive damages against MICROSOFT in an amount appropriate to punish and make an example of Defendants.

        **WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

**THIRD CAUSE OF ACTION**
**(Retaliation in Violation of FEHA)**

88.     By this reference, Plaintiff hereby incorporates paragraphs 1 through 87, inclusive, of this Complaint as if set forth herein.

89.     This Cause of Action is brought pursuant to California Government Code §§12900, *et seq.*, and the common law of the State of California which prohibits retaliation against employees for engaging in protected activity.

90.     At all relevant times, MICROSOFT was, and is, an employer subject to suit under the California Fair Employment and Housing Act, Cal. Gov't Code § 12940, *et seq.* (hereinafter "FEHA") and the common law of the State of California, in that it is a business with five or more employees doing business in the State of California.

91.     Plaintiff timely filed two Complaints with the California Department of Fair Employment and Housing ("DFEH"). Plaintiff received a Plaintiff's "Right to Sue" from the DFEH. Both Complaints of Retaliation and the Right to Sue letters have been served on the Defendants and Plaintiff timely files this action.

92.     MICROSOFT retaliated against Plaintiff by, but not limited to:

        a.  Subjecting Plaintiff to conduct that was harassing, blaming and intimidating;

        b.  Giving Plaintiff an undeserved, negative performance review;

        c.  Denying Plaintiff bonuses and other benefits to which she was entitled;

        d.  Failing to adequately and timely investigate and respond to Plaintiff's internal complaint of gender discrimination and/or to Plaintiff's DFEH complaint;

        e.  Failing to take temporary and/or permanent steps to address and remedy Plaintiff's work situation while MICROSOFT investigated the complaint of gender discrimination;

        f.  Failing to take appropriate corrective action to remedy the situation;

16

g.   Failing to provide Plaintiff with a workplace free of discrimination, harassment and retaliation; and,

h.   Constructively terminating Plaintiff from her position.

93.   As a direct and proximate result of MICROSOFT's unlawful conduct as herein alleged, Plaintiff has suffered and continues to suffer general and special damages, including lost salary, benefits, bonuses, other employee benefits, lost career opportunities, and loss of reputation, in an amount in excess of the jurisdictional minimum of this Court, the precise amount to be proven at trial.

94.   As a further, direct and proximate result of MICROSOFT's unlawful conduct, Plaintiff has suffered and continues to suffer extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time and the amount of damages not yet fully ascertained but in excess of the jurisdiction of this Court, the precise amount to be proven at trial.

95.   The conduct of MICROSOFT, its agents, and employees as described herein was oppressive, fraudulent, and malicious, thereby entitling Plaintiff to an award of punitive damages against MICROSOFT in an amount appropriate to punish and make an example of Defendants.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### FOURTH CAUSE OF ACTION
**(Failure to Prevent and/or Remedy Discrimination, Harassment and Retaliation under FEHA)**

96.   By this reference, Plaintiff hereby incorporates paragraphs 1 through 95, inclusive, of this Complaint as if set forth herein.

97.   This cause of action is brought pursuant to California Government Code §§ 12900 *et seq.*, and the common law of the State of California, which makes it an unlawful employment practice for an employer "*to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring.*"

98.   At all times relevant hereto, MICROSOFT was a corporation, which employed 5 or more persons, engaged in an industry affecting commerce, bringing it within the provisions of California Government Code §§12900, *et seq.*, and the common law of the State of California,

17

which places a duty on employers to prevent discrimination and harassment from occurring on the basis of gender.

99.     Plaintiff timely filed two Complaints with the California Department of Fair Employment and Housing ("DFEH").  Plaintiff received a Plaintiff's "Right to Sue" from the DFEH. Both Complaints of Discrimination and the Right to Sue letters have been served on the Defendants and Plaintiff timely files this action.

100.    MICROSOFT owed a duty to Plaintiff to prevent discrimination, harassment and retaliation from occurring against her in their employment relationship.

101.    In September 2011, Plaintiff's situation was the subject of an internal complaint of gender discrimination filed by other female colleagues. Their complaint was investigated by a MICROSOFT employee who did not interview the other four women about their joint statement that "…Susan Zody, who is currently on sabbatical but has experienced mistreatment and gender discrimination while working for [the Regional Vice President]…[W]e believe her current investigation should be review as part of this CONCERTED EFFORT." The investigation was neither prompt nor thorough as required and MICROSOFT failed and/or refused to remedy or correct the situation.

102.    In November 2011 and February 7, 2012, Plaintiff timely filed Complaints with the California Department of Fair Employment and Housing ("DFEH") and received the "Right to Sue" from the DFEH. Both Complaints of Discrimination and the Right to Sue letters have been served on MICROSOFT and Plaintiff timely files this action.

103.    MICROSOFT knows, or should know, that Plaintiff was being harassed, retaliated against and discriminated against on the basis of her gender, female, in the terms and conditions of her employment.

104.    Had the investigation been thorough and the appropriate individuals interviewed by an independent investigator, the true facts would have been told. Not only did MICROSOFT fail to take prompt action to correct the discriminatory and harassing work environment, it failed to thoroughly investigate Plaintiff's situation and issue a timely report of the investigation. Not until this lawsuit was filed did MICROSOFT take steps to conclude the investigation.

105.    MICROSOFT failed to take all reasonable steps to expedite the investigation into Plaintiff's complaints. Despite Plaintiff being told that the investigation into the internal September 2011 complaint would be completed in two weeks, between September 2011 and January 2012 nothing was done to alter the situation.

106.    In January 2012, despite acknowledging that Plaintiff was subjected to harassment and was treated in an unprofessional, rude and abrasive manner on a regular basis, Plaintiff was directed to return to the discriminatory and harassing work environment by Human Resources.

107.    MICROSOFT breached its duty to Plaintiff by failing to take any steps to prevent the discrimination, harassment and retaliation from occurring.

108.    MICROSOFT breached its duty to Plaintiff by failing to take prompt action to correct the discriminatory and harassing work environment, resulting in retaliation against Plaintiff.

109.    As a direct and proximate result of MICROSOFT's unlawful conduct as herein alleged, Plaintiff has suffered and continues to suffer general and special damages, including lost salary, benefits, bonuses, other employee benefits, lost career opportunities and loss of reputation, in an amount in excess of the jurisdictional minimum of this Court, the precise amount to be proven at trial.

110.    As a further, direct and proximate result of MICROSOFT's unlawful conduct, Plaintiff has suffered and continues to suffer extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time and the amount of damages not yet fully ascertained but in excess of the jurisdiction of this Court, the precise amount to be proven at trial.

111.    The conduct of MICROSOFT, its agents, and employees as described herein was oppressive, fraudulent, and malicious, thereby entitling Plaintiff to an award of punitive damages against MICROSOFT in an amount appropriate to punish and make an example of Defendants.

    **WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## FIFTH CAUSE OF ACTION
### (For Breach of Contract)

112.    By this reference, Plaintiff hereby incorporates paragraphs 1 through 111, inclusive, of this Complaint as if set forth herein.

113.    Plaintiff and MICROSOFT entered into an employment agreement that was partly oral, partly written and partly implied-in-fact.

114.    As part of the partly oral, partly written and partly implied-in-fact employment agreement, MICROSOFT had written policies of zero tolerance of harassment, discrimination, and retaliation.  Further, the company had written policies addressing prohibited discrimination and harassment in the workplace and the need to investigate every complaint thoroughly and promptly.

115.    As part of the partly oral, partly written and partly implied-in-fact employment agreement, MICROSOFT was required to undertake "prompt" and "unbiased" investigations into complaints of discrimination and harassment by employees.

116.    As part of the partly oral, partly written and partly implied-in-fact employment agreement, MICROSOFT had written policies and practices that prohibited harassment or intimidation of another person "for any reason" and required a thorough and prompt investigation of any such complaints. Assurances were made to Plaintiff that her complaints would be promptly and thoroughly investigated, but they were not. After she returned from her Sabbatical, the Regional Vice President continued the conduct and Human Resources failed and/or refused to follow the policies and practices that required "Company Action."

117.    As part of the partly oral, partly written and partly implied-in-fact employment agreement, increases in base compensation, bonus amounts and stock awards were contingent upon the rating of an employee's performance relative to their peers.

118.    MICROSOFT breached the employment agreement by, but not limited to:

    a.    Subjecting Plaintiff to abusive, demeaning behavior on a regular basis;

    b.    Failing to correct the abusive and demeaning situation after Plaintiff lodged her several complaints with Human Resources and with other MICROSOFT  agents;

    c.    Failing to thoroughly or promptly investigate Plaintiff's complaints of discrimination and harassment as described in this Summons and Complaint and incorporated in to this Cause of Action;

d.   Disregarding the obligations of supervisors at MICROSOFT in regards to diversity and performance standards;

e.   Treating Plaintiff differently in the terms and conditions of employment;

f.   Specifying the goals for Plaintiff's performance then evaluating her performance under different and unknown criteria, all to the detriment of Plaintiff's compensation package, to which Plaintiff otherwise would have been entitled under her employment agreement with MICROSOFT;

g.   The manner in which the performance reviews were conducted relative to the goals that were given to her and the manner in which the performance ratings were calibrated as to Plaintiff's performance compared to the performance of other employees, all to the detriment of Plaintiff's compensation package, to which Plaintiff otherwise would have been entitled under her employment agreement with MICROSOFT;

h.   Failing, and refusing, to adhere to its own policies and practices in its treatment of Plaintiff; and,

i.   Constructively terminating Plaintiff from her position.

119.   At all relevant times, Plaintiff was ready, willing, and able to perform her duties as West Region Business Manager under the employment agreement. Plaintiff in good faith performed all of the obligations of her employment agreement, except to the extent that she was prevented from doing so by MICROSOFT and its agents.

120.   As a direct and proximate result of Defendant's unlawful conduct as herein alleged, Plaintiff has suffered and continues to suffer substantial damages, including lost salary, benefits, bonuses and other employee benefits, in an amount in excess of the jurisdictional minimum of this Court, the precise amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

### <u>SIXTH CAUSE OF ACTION</u>
**(Breach Of The Implied Covenant Of Good Faith And Fair Dealing)**

121.   By this reference, Plaintiff hereby incorporates paragraphs 1 through 120, inclusive, of this Complaint as if set forth herein.

122.     In every contract with employees in the State of California, there exists a covenant of good faith and fair dealing, requiring the employer not to take any action in bad faith to deny the employee compensation to which she is reasonably entitled.

123.     As a result of the employment relationship which existed between Plaintiff and MICROSOFT, the express and implied contracts made in connection therewith, the acts, conduct, promises and communications which resulted in said contract, and by operation of the law of the State of California, MICROSOFT covenanted and promised to act in good faith towards and deal fairly with Plaintiff.

124.     Defendants have breached the covenant of good faith and fair dealing, by their conduct including, but not limited to, the following:

    a.    Knowing and willfully ranking Plaintiff's performance lower than other similarly situated males despite Plaintiff having achieved higher results than the other similarly situated males all to the effect of denying Plaintiff compensation to which she was entitled under her employment agreement with MICROSOFT;

    b.    Knowing and willfully adopting and implementing a subjective, discriminatory formula for evaluating, ranking and downgrading the performance of employees who meet and/or exceed the goals assigned to them by management all to the effect of denying Plaintiff compensation to which she was entitled under her employment agreement with MICROSOFT;

    c.    Knowing and willfully acting in bad faith and with discriminatory motives to deny Plaintiff compensation to which she was entitled under her employment agreement with MICROSOFT.

125.     Defendants' breach of the covenant of good faith and fair dealing was a substantial factor in causing damage and injury to the Plaintiff. As a direct and proximate result of Defendants' unlawful conduct as herein alleged, Plaintiff has suffered and continues to suffer substantial damages, including lost salary, benefits, bonuses, and other employee benefits, in an amount in excess of the jurisdictional minimum of this Court, the precise amount to be proven at trial.

**WHEREFORE**, Plaintiff prays for judgment against Defendants as hereinafter set forth.

## SEVENTH CAUSE OF ACTION
### (Constructive Discharge in Violation of Public Policy)

126.    By this reference, Plaintiff hereby incorporates paragraphs 1 through 125, inclusive, of this Complaint as if set forth herein.

127.    The fundamental, substantial, and well grounded public policy of the State of California as expressed in the Fair Employment and Housing Act, California Government Code §§ 12920, 12921, 12926, 12940, prohibits discrimination and harassment in employment on the basis of gender, and prohibits retaliation against an employee for engaging in protected activity.

128.    In October 2010, Plaintiff accepted the position of West Region Business Manager reporting to the Regional Vice President.

129.    While reporting to the Regional Vice President, for over a year, Plaintiff was subjected to a continuous pattern of discrimination and harassment because of her gender, and retaliation for engaging in protected activity.

130.    While reporting to the Regional Vice President, Plaintiff was subjected to discrimination on the basis of her gender, including, but not limited to:

      a.  Plaintiff was treated differently than other similarly situated males in the terms and conditions of her employment;

      b.  Plaintiff was held to higher performance standards than other similarly situated males;

      c.  Despite outperforming other similarly situated males, Plaintiff was ranked lower than other similarly situated males on her last annual performance review, all to Plaintiff's detriment;

      d.  MICROSOFT did nothing to prevent, remedy or correct the harassment and discrimination before or after receiving both the internal complaints and the DFEH complaint; and,

      **e.**  Plaintiff was not provided with a workplace free of discrimination, harassment and retaliation.

131.     The Regional Vice President engaged in, but not limited to, the following actions with the intent of harassing Plaintiff on account of her gender:

    a.   Making gender based assumptions about Plaintiff's ability to do her job;

    b.   Demeaning Plaintiff and acting condescending toward Plaintiff on a regular basis in private and public meetings because of her gender, female. Plaintiff was humiliated by this treatment from her manager. She was approached by other co-workers who commented to Plaintiff how inappropriately she was being treated by her manager;

    c.   Criticizing Plaintiff for not working during her prescheduled and pre-approved sabbatical, while male employees were not similarly criticized for not working during their sabbaticals;

    d.   Inappropriately touching Plaintiff and commenting on her body;

    e.   Routinely dismissing Plaintiff's contributions and expertise while deferring to and embracing the same ideas from similarly situated, less qualified males;

    f.   Routinely communicating with Plaintiff in a rude and abrupt manner; and,

    g.   By not undertaking steps, temporarily or permanently, to prevent, correct or remedy the situation after MICROSOFT was given both internal notice of the discrimination and harassment as well as notice by way of the DFEH complaint.

132.     While reporting to the Regional Vice President, MICROSOFT retaliated against Plaintiff by, but not limited to:

    a.   Subjecting Plaintiff to conduct that was harassing, blaming and intimidating;

    b.   Giving Plaintiff an undeserved, negative performance review;

    c.   Denying Plaintiff bonuses and other benefits to which she was entitled;

    d.   Failing to adequately and timely investigate and respond to Plaintiff's internal complaint of gender discrimination and/or to Plaintiff's DFEH complaint;

    e.   Failing to take temporary and/or permanent steps to address and remedy Plaintiff's work situation while MICROSOFT investigated the complaint of gender discrimination;

SECOND AMENDED COMPLAINT
CV 12-0942 YGR

f.   Failing to take appropriate corrective action to remedy the situation; and,

g.   Failing to provide Plaintiff with a workplace free of discrimination, harassment and retaliation.

133.   The harassment, discrimination and retaliation to which Plaintiff was subjected deteriorated her working conditions to such a degree that a reasonable person would not have been able to work in the abusive environment.

134.   MICROSOFT intentionally created or knowingly permitted these working conditions to continue.

135.   These working conditions were so intolerable that a reasonable person in Plaintiff's position would have had no reasonable alternative except to deem the employer's conduct a constructive discharge of her employment.

136.   Because of the employer's actions, and its failure to act, Plaintiff was constructively terminated from her position of West Region Business Manager on February 7, 2012.

137.   As a direct and proximate result of MICROSOFT's unlawful conduct as herein alleged, Plaintiff has suffered and continues to suffer general and special damages, including lost salary, benefits, bonuses, other employee benefits, lost career opportunities, and loss of reputation, in an amount in excess of the jurisdictional minimum of this Court, the precise amount to be proven at trial.

138.   As a further, direct and proximate result of MICROSOFT's unlawful conduct, Plaintiff has suffered and continues to suffer extreme anguish, humiliation, and emotional distress, the extent of which is not fully known at this time and the amount of damages not yet fully ascertained but in excess of the jurisdiction of this Court, the precise amount to be proven at trial.

139.   The conduct of MICROSOFT, its agents, and employees as described herein was oppressive, fraudulent, and malicious, thereby entitling Plaintiff to an award of punitive damages against MICROSOFT in an amount appropriate to punish and make an example of Defendants.

//

//

//

SECOND AMENDED COMPLAINT
CV 12-0942 YGR

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff S. ZODY prays for judgment against Defendants, and MICROSOFT in particular, as follows:

1.   For a judgment awarding compensatory damages including lost compensation and lost benefits in excess of the jurisdictional minimum of this Court and according to proof pursuant to Plaintiff's First, Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action according to proof at trial;

2.   For a judgment awarding damages for emotional distress pursuant to Plaintiff's First, Second, Third, Fourth and Seventh Causes of Action according to proof at trial;

3.   For a judgment awarding punitive damages pursuant to Plaintiff's First, Second, Third, Fourth and Seventh Causes of Action according to proof at trial;

4.   For a judgment awarding attorneys' fees and costs under California Government Code §12965, under Plaintiff's First, Second, Third and Fourth Causes of Action;

5.   For a judgment awarding attorney's fees and costs under California Code of Civil Procedure §1021.5 for enforcement of an important right affecting the public interest pursuant to Plaintiff's Seventh Cause of Action;

6.   For prejudgment interest pursuant to California Civil Code §§ 3287, 3288 and 3291 on all amounts claimed pursuant to all causes of action; and,

7.   For such other and further relief as the Court shall deem just and proper.

Date: March 23, 2012                                     THE LUCAS LAW FIRM


                                                              __/S/Kathleen M. Lucas___
                                                              KATHLEEN M. LUCAS
                                                              SHAWNA B. CASEBIER
                                                              Attorneys for Plaintiff
                                                              S. ZODY
//
//
//

SECOND AMENDED COMPLAINT
CV 12-0942 YGR

## <u>PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY</u>

As to all claims allowing for trial by jury, Plaintiff hereby demands a trial by jury.

Date: March 23, 2012                    THE LUCAS LAW FIRM


                                          __/S/Kathleen M. Lucas___
                                        KATHLEEN M. LUCAS
                                        SHAWNA B. CASEBIER
                                        Attorneys for Plaintiff
                                        S. ZODY