UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. ZODY,<br><br>              Plaintiff,<br><br>     vs.<br><br>MICROSOFT CORPORATION,<br><br>              Defendant. | Case No.: 12-cv-00942- YGR<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION BY DEFENDANT MICROSOFT CORPORATION TO DISMISS AND STRIKE PLAINTIFF'S CLAIMS, OR ALTERNATIVELY, FOR A MORE DEFINITE STATEMENT** |

Plaintiff S. Zody removed this employment discrimination and harassment action against Defendant Microsoft Corporation to federal court on February 24, 2012. (Dkt. No. 1.) In her Second Amended Complaint for Damages ("SAC"), Plaintiff alleges seven claims against Defendant: (1) Discrimination Based on Gender under FEHA; (2) Harassment Based on Gender in Violation of FEHA; (3) Retaliation in Violation of FEHA; (4) Failure to Prevent and/or Remedy Discrimination, Harassment and Retaliation under FEHA; (5) Breach of Contract; (6) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (7) Constructive Discharge in Violation of Public Policy. (Dkt. No. 21.)

Defendant filed a Motion to Dismiss and Strike Plaintiff's Claims on April 6, 2012. (Dkt. No. 22 ("Motion" or "Mot.").) In the Motion, Defendant alternatively moved for a more definite statement from Plaintiff.[1] Mot. at 3–4. Defendant's Motion is not directed to all claims. Specifically, Defendant seeks dismissal of the fifth claim for breach of contract, sixth claim for breach of the implied covenant of good faith and fair dealing, and seventh claim for constructive discharge on the grounds that the claims are conclusory, speculative, and/or insufficient to state facts necessary to state

---
[1] For the sake of clarity, the Court will refer to the alternative request for a more definite statement as the "Motion for a More Definite Statement," even though a separate motion was not made.

a plausible claim under *Iqbal/Twombly*. As to the second claim for harassment, Defendant moves to strike the allegations premised on personnel management actions because such actions cannot form the basis of harassment as a matter of law. Plaintiff filed an Opposition to the Motion to Dismiss and Strike Plaintiff's Claims on April 20, 2012. (Dkt. No. 24 ("Opposition" or "Opp.").) Defendant filed its Reply on April 27, 2012. (Dkt. No. 25 ("Reply").) Counsel for both parties appeared for oral argument on May 15, 2012.

Having carefully considered the papers submitted and the pleadings in this action, and for the reasons set forth below, the Court hereby:

- **GRANTS** the Motion to Dismiss the fifth claim for breach of contract **WITH LEAVE TO AMEND**;
- **GRANTS** the Motion to Dismiss the sixth claim for breach of the implied covenant of good faith and fair dealing **WITH LEAVE TO AMEND**;
- **DENIES** the Motion for a More Definite Statement as to the fifth and sixth claims as moot;
- **DENIES** the Motion to Dismiss and Motion for a More Definite Statement as to the seventh claim for constructive discharge; and
- **DENIES** the Motion to Strike any allegations in the second claim for harassment.

## I. FACTUAL AND PROCEDURAL BACKGROUND[2]

The operative complaint at the time of removal was the First Amended Complaint. Defendant filed a motion to dismiss and strike as to that complaint. (Dkt. No. 11.) Plaintiff sought to amend in order to address issues raised in that motion and thereafter filed the SAC. As such, this Motion is the first time that the Court has tested the sufficiency of Plaintiff's claims.

In the SAC, Plaintiff alleges that the Regional Vice President ("RVP"), to whom she directly reported, harassed and discriminated against her on the basis of gender. SAC ¶¶ 21–22. He "regularly subjected Plaintiff in private and in public to demeaning, abusive, gender-based criticism," sent "rude and abrupt emails," "would yell at [her] and belittle her both privately and publicly," and

---

[2] Because the pending Motion addresses only certain claims and issues, the following section is not intended to provide an exhaustive summary of the factual or procedural background in this action.

2

"act[ed] belligerently and condescendingly toward [her]." *Id.* ¶¶ 29–32. He also blamed her for mistakes or errors that were not her fault and dismissed her contributions at meetings. *Id.* ¶¶ 33–34; *see id.* ¶¶ 25, 29, 32 & 80(b). One incident involved the RVP touching Plaintiff's stomach and making an inappropriate comment. *Id.* ¶ 37. She alleges that the RVP did not subject other similarly situated males to the same harsh treatment. *Id.* ¶¶ 33–34. In addition, Plaintiff alleges that the RVP's pattern of behavior included "downgrad[ing]" Plaintiff with undeserving negative performance reviews. *Id.* ¶¶ 27, 40 & 44–45. These ratings not only violated Defendant's policies for rating performance, but they severely impacted Plaintiff's compensation package and her ability to further her career with Defendant. *Id.* ¶¶ 33, 40 & 46.

Plaintiff alleges that in June 2011 she lodged a complaint with Human Resources ("HR") about the RVP's discriminatory and harassing conduct, but that it failed to investigate or correct the situation in response to her complaint. SAC ¶¶ 10, 11 & 24. In September 2011, five female employees within Plaintiff's division filed an internal complaint of gender discrimination against the RVP and his subordinate. *Id.* ¶ 12. In October 2011, these female employees filed a second, supplemental complaint. *Id.* Following the September 2011 complaint, an HR investigator interviewed Plaintiff, but did not question the other female employees about RVP's treatment of Plaintiff. *Id.* ¶¶ 15, 48. Because Defendant allegedly failed to act, address and remedy Plaintiff's situation, she filed a complaint with the Department of Fair Employment and Housing on November 9, 2011. *Id.* ¶ 49. Thereafter, she received her Right to Sue notice. *Id.*

In September 2011, because of her working conditions, Plaintiff took a two-month, performance-awarded sabbatical. *Id.* ¶ 47. Yet, the RVP criticized Plaintiff for taking the sabbatical. *Id.* Upon her return, Defendant assigned her to the same position despite "acknowledging" that the RVP had treated her unprofessionally and her request for reassignment. *Id.* ¶¶ 50–52 & 54. The RVP continued to harass Plaintiff despite further notice to Defendant. *Id.* ¶¶ 53, 56–57. The situation became so "intolerable" that Plaintiff was "constructively terminated" on February 7, 2012. *Id.* ¶ 59.

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6) and 12(e)

Defendant principally moves under Fed. R. Civ. P. 12(b)(6) and challenges the legal sufficiency of the claims alleged. "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S. Ct. 1937, 1950 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."); *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under *Twombly,* a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 556–57) (internal quotation marks omitted). In sum, if the facts alleged foster a reasonable

4

inference of liability—stronger than a mere possibility—the claim survives; if they do not, the claim must be dismissed. *See Iqbal,* 129 S. Ct. at 1949–50.

As an alternative ground, Defendant moves under Fed. R. Civ. P. 12(e): "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Although generally viewed with disfavor, the proper test in evaluating a Rule 12(e) motion is "whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings." *Cellars v. Pacific Coast Packaging, Inc.*, 189 F.R.D. 575, 578 (N.D. Cal. 1999) (more definite statement should be required where the pleading is "so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith or without prejudice to himself") (internal citations omitted).

### B.     Breach of Contract (Fifth Claim)

Defendant contends that the SAC fails to state a claim for breach of contract or that the Court should order a more definite statement regarding this claim. Specifically, Defendant asserts that a contract requires mutual consent and that the terms must be "sufficiently definite" such that the performance promised is reasonably certain. Mot. at 4. In particular, Defendant objects that it cannot discern the nature of the alleged contractual relationship, nor the alleged obligations, duties, or breaches thereof. An *Iqbal/Twombly* analysis controls resolution of this issue.

As to the contract claim, Plaintiff does allege that she and Defendant "entered into an employment agreement that was partly oral, partly written and partly implied-in-fact." SAC ¶ 113. The basis of the agreement included "written policies of zero tolerance of harassment, discrimination, and retaliation," assurances "to investigate every complaint thoroughly and promptly" and performance-based compensation. *Id.* ¶¶ 114–115 & 117. Plaintiff has identified Defendant's "policies" as a source of the agreement, but she has also clearly stated that there are more components to the agreement than these writings.[3] The specific breaches outlined in SAC ¶¶ 116 & 118 stem from violations of these policies.

---

[3] *See* SAC ¶¶ 10–11, 35, 51, 57, 114–116 & 118 (referring to anti-discrimination, anti-harassment, internal complaint, or investigation policies).

Defendant contends that an employer's policies cannot form the basis of an alleged contract as a matter of law because "a promise to conform to the law [FEHA] lacks consideration and is therefore unenforceable." *Id.* at 5 (quoting *Farmearl v. Storopack, Inc.*, No. C-04-02644 RMW, 2005 WL 2206696, at *9 (N.D. Cal. Sep. 12, 2005) (citing Cal. Civ. Code § 1605)). Plaintiff responds that Defendant's policies went beyond FEHA to include, for example, zero tolerance for harassment and prompt investigations. Opp. at 7. As such, Plaintiff asserts there was consideration for a contract that Defendant then breached.

At this juncture, the Court cannot discern from the SAC the bases for the "partly oral, partly written and partly implied-in-fact" portions of the contract. To the extent that Plaintiff simply alleges a contract existed, that allegation is itself conclusory because the contract's formation and its terms (among other things) are unclear. *Twombly,* 550 U.S. at 555; *see Sears v. County of Monterey*, No. C 11-01876 SBA, 2012 WL 368688, at *4 (N.D. Cal. Feb. 3, 2012) ("Plaintiffs have failed to allege a plausible claim for breach of contract. In particular, no facts are alleged regarding the terms of the alleged employment contract, the identity of the parties to said agreement or the particular provisions allegedly breached by Defendants. If [plaintiff's] intention is to state a claim for breach of contract, he must allege such facts to support each element of his claim.") (citing *Iqbal*, 129 S. Ct. at 1949). The Court requires a clear articulation of the factual basis for this claim.

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss the fifth claim for breach of contract **WITH LEAVE TO AMEND** and **DENIES** the Motion for a More Definite Statement as moot.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing (Sixth Claim)

Defendant moves to dismiss this claim on the grounds that: (1) the claim for breach of the implied covenant of good faith and fair dealing cannot succeed based on the defective contract claim on which the covenant relies; (2) plaintiff has failed to allege the contractual basis regarding performance rankings; and (3) her allegations regarding "good faith" are not sufficiently specific under *Iqbal/Twombly*. Mot. at 6. Plaintiff counters that the covenant of good faith and fair dealing is implied by law in every employment contract, and whether an employer acted in good or bad faith to deprive an employee of contract rights must necessarily be resolved by the trier of fact. Opp. at 10; *see Guz v. Bechtel*, 24 Cal. 4th 317, 349 (2000).

The Court agrees that the "covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690 (1988). The obligations imposed by the covenant are "measured by the provisions of the particular agreement at issue." *Kuhn v. Dept. of General Services*, 22 Cal. App. 4th 1627, 1637 (Cal. Ct. App. 1994). However, "insofar as the employer's acts are directly actionable as a breach of an implied-in-fact contract term, a claim that merely re-alleges that breach as a violation of the covenant is superfluous." *Guz*, 24 Cal. 4th at 352 ("Allegations that the breach was wrongful, in bad faith, arbitrary, and unfair are unavailing; there is no tort of 'bad faith breach' of an employment contract."); *see also Bionghi v. Metropolitan Water Dist. of Southern California*, 70 Cal. App. 4th 1358, 1370 (Cal. Ct. App. 1999) (claim for breach of the implied covenant relying on the same acts as a contract claim in an employment context may be disregarded as duplicative). Because this claim focuses on whether the employer has engaged in bad faith with a motive to frustrate an employee's enjoyment of contract rights, an underlying contract must exist, by definition. Thus, because the Court holds that the breach of contract claim must be dismissed, the implied covenant claim must follow suit. The Court would further dismiss this claim to the extent that it is duplicative of the breaches alleged in the contract claim. *Compare* SAC ¶¶ 118 & 120 *with* 124–125.

For the foregoing reasons, the Court **GRANTS** the Motion to Dismiss the sixth claim for breach of the implied covenant of good faith and fair dealing **WITH LEAVE TO AMEND** and **DENIES** the Motion for a More Definite Statement as moot.

### D. Constructive Discharge in Violation of Public Policy (Seventh Claim)

Defendant next contends that as a matter of law Plaintiff must, but failed to, allege "sufficiently extraordinary and egregious" conduct which would "overcome the normal motivation" of an employee and lead to constructive discharge. Mot. at 8. Defendant refers the Court to a number of orders on summary judgment motions, stating that these cases serve as a guide at the pleading stage to determine which types of facts will ultimately fail as a matter of law to meet the "extraordinary" and "egregious" standards. Reply at 5. Plaintiff responds that she must simply allege "some aggravating factors, such as a continuous pattern of discriminatory treatment" and that whether the

conditions were so intolerable to justify her decision to resign should be left for the trier of fact.  Opp. at 11.

As to the underlying facts regarding constructive discharge, Plaintiff alleges that she was "subjected to a continuous pattern of discrimination and harassment because of her gender, and retaliation for engaging in [a] protected activity." SAC ¶ 129.  This continuous pattern included the RVP making gender-based assumptions, demeaning Plaintiff and acting condescending in both private and public settings, criticizing her, inappropriately touching her, dismissing Plaintiff's contributions, and communicating with her in a rude and abrupt manner. *Id.* ¶¶ 130–31.  The retaliation that Plaintiff allegedly suffered included undeserving and negative performance reviews and being denied bonuses and other benefits to which she was entitled. *Id.* ¶ 132.  At the same time, Plaintiff alleges that Defendant failed to investigate her complaints, to take appropriate corrective action, and to provide her with a workplace free of discrimination, harassment, and retaliation. *Id.*  These conditions "deteriorated her working conditions to such a degree that a reasonable person would not have been able to work in the abusive environment" and were "so intolerable that a reasonable person in Plaintiff's position would had no reasonable alternative except to deem the employer's conduct a constructive discharge of her employment. *Id.* ¶¶ 133 & 135.

Whether the continuous discrimination and harassment that Plaintiff has alleged actually rose to the level of "extraordinary" or "egregious" for the purposes of constructive discharge is an issue of fact that cannot be resolved on a motion to dismiss.  Taking Plaintiff's allegations as true, the Court finds that the SAC pleads sufficient factual content to reasonably infer that Defendant is liable for the conduct alleged. *Iqbal,* 129 S. Ct. at 1949; *Twombly,* 550 U.S. at 556.

For these reasons, Defendant's Motion to Dismiss and Motion for a More Definite Statement are **DENIED** as to the seventh claim for constructive discharge.

### E. Striking Allegations Regarding Harassment (Second Claim)

Defendant moves to strike allegations based on "personnel management [actions] that cannot constitute a basis for harassment as a matter of law." Mot. at 9.  Specifically, Defendant identifies the allegations regarding: undeserved performance reviews; criticisms for not working during her sabbatical; failure to prevent, correct, or remedy the alleged discrimination, harassment, and

retaliation; constructive termination; and Plaintiff's treatment following her internal complaint. *Id.* at 9–10; SAC ¶¶ 80–81. Defendant argues that these personnel actions cannot form the basis for harassment as a matter of law because harassment only consists of conduct that is *outside* of necessary business and personnel management duties. Mot. at 10 (citing *Reno v. Baird*, 18 Cal. 4th 640, 645–47 (1998) and *Janken v. GM Hughes Electronics*, 46 Cal. App. 4th 55, 62–65 (Cal. Ct. App. 1996)); Reply at 7.

Fed. R. Civ. P. 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a Rule 12(f) "is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty,* 984 F.2d 1524, 1527 (9th Cir.1993), rev'd on other grounds, 510 U.S. 517 (1994)). Such motions are generally disfavored because they are often used as delaying tactics and because of the limited importance of pleadings in federal practice. *Bureerong v. Uvawas,* 922 F. Supp. 1450, 1478 (C.D. Cal. 1996). Further, motions to strike are generally not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation. *LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992).

Here, Plaintiff contends that there is no basis for excluding evidence of biased personnel management actions in harassment claims, so long as the evidence is relevant to prove the communication of a hostile message. Opp. at 13 (citing *Roby v. McKesson*, 47 Cal. 4th 686, 706–708 (2009)). In *Roby*, the Court explained that "harassment focuses on situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee." *Id.* at 706. While, under FEHA, "harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace," "discrimination refers to bias in the exercise of official actions on behalf of the employer." *Id.* at 707. *Roby* further clarified that "in some cases the hostile message that constitutes harassment is conveyed *through official employment actions*, and therefore evidence that would otherwise be associated with a discrimination claim can form the basis of a harassment claim." *Id.* at 708 (emphasis supplied), citing *Miller v. Dept. of Corrections*, 36 Cal. 4th 446, 460–66 (2005) and

9

*Reno*, 18 Cal. 4th at 645–47. In particular, where there are allegations of a widespread pattern of bias, evidence of discrimination can also support harassment "by establishing discriminatory animus on the part of the manager responsible for the discrimination, thereby permitting the inference that rude comments or behavior by that same manager was similarly motivated by discriminatory animus." *Roby*, 47 Cal. 4th at 709.

At this stage, the Court cannot hold that the allegations regarding personnel management actions are redundant, immaterial, impertinent or scandalous, nor that they have no possible bearing on the harassment claim. Fed. R. Civ. P. 12(f); *LeDuc,* 814 F. Supp. at 830. For these reasons, the Court **DENIES** the Motion to Strike allegations regarding to the second claim for harassment.

## III.   CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's Motion to Dismiss and Strike, and alternative Motion for a More Definite Statement. Specifically, the Court:

- **GRANTS** the Motion to Dismiss the fifth claim for breach of contract **WITH LEAVE TO AMEND**;
- **GRANTS** the Motion to Dismiss the sixth claim for breach of the implied covenant of good faith and fair dealing **WITH LEAVE TO AMEND**;
- **DENIES** the Motion for a More Definite Statement as to the fifth and sixth claims as moot;
- **DENIES** the Motion to Dismiss and Motion for More Definite Statement as to the seventh claim for constructive discharge; and
- **DENIES** the Motion to Strike any allegations in the second claim for harassment.

Plaintiff's Third Amended Complaint shall be filed within fourteen (14) days from the date of this Order. Defendant shall respond within fourteen (14) days after the Third Amended Complaint is filed. This Order terminates Dkt. No. 22.

The Court further **ORDERS** that the parties comply with the Court's Initial Discovery Protocols, as stated in the Court's Standing Order for Certain Employment Cases, within forty-five (45) days from the date of this Order. This Order hereby **MODIFIES** the Court's previous order at Dkt. No. 18 based on the stipulation of the parties.

**IT IS SO ORDERED.**

Dated: May 16, 2012

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**