UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| S. ZODY,<br><br>            Plaintiff,<br><br>    vs.<br><br>MICROSOFT CORPORATION,<br><br>            Defendant. | Case No.: 12-cv-00942- YGR<br><br>**ORDER DENYING MOTION BY DEFENDANT MICROSOFT CORPORATION TO DISMISS AND STRIKE PLAINTIFF'S CLAIMS** |

Defendant Microsoft Corporation ("Defendant" or "Microsoft") removed this employment discrimination and harassment action to federal court on February 24, 2012.  (Dkt. No. 1.)  In her Third Amended Complaint for Damages ("TAC"), Plaintiff S. Zody ("Plaintiff") alleges seven claims against Defendant: (1) Discrimination Based on Gender under FEHA; (2) Harassment Based on Gender in Violation of FEHA; (3) Retaliation in Violation of FEHA; (4) Failure to Prevent and/or Remedy Discrimination, Harassment and Retaliation under FEHA; (5) Breach of Contract; (6) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (7) Constructive Discharge in Violation of Public Policy.  (Dkt. No. 33.)

Defendant filed a Motion to Dismiss and Strike Plaintiff's Claims on June 13, 2012.  (Dkt. No. 35 ("Motion" or "Mot.").)  Defendant seeks dismissal of the breach of contract claim based largely on a request for judicial notice of an employment agreement signed by Plaintiff, disclaimers contained in the employee handbook and on the Microsoft intranet site, and certain handbook sections; Defendant contends that based on these documents, it expressly disclaimed the creation of an enforceable contract.  Defendant alternatively moves to strike alleged contract terms that are unenforceable because they restate the requirements of applicable law (here, FEHA).  Defendant also seeks dismissal

of the claim for breach of the implied covenant of good faith and fair dealing on the ground that (i) it cannot survive without the contract claim upon which it relies, or (ii) it is duplicative of the contract claim. Plaintiff filed an Opposition to the Motion to Dismiss and Strike Plaintiff's Claims on June 27, 2012. (Dkt. No. 37 ("Opposition" or "Opp.").) Defendant filed its Reply in Support of Motion to Dismiss and Strike Plaintiff's Claims on July 5, 2012. (Dkt. No. 38 ("Reply").) Counsel for both parties appeared for oral argument on July 24, 2012. (Dkt. No. 40.)

Having carefully considered the papers submitted and the pleadings in this action and for the reasons set forth below, the Court hereby **DENIES** Defendant's request for judicial notice and Defendant's Motion to Dismiss and Strike in its entirety.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

The operative complaint at the time of removal was the First Amended Complaint. Defendant filed a motion to dismiss and strike as to that complaint. (Dkt. No. 11.) Plaintiff sought to amend in order to address issues raised in that motion and thereafter filed a Second Amended Complaint ("SAC"). (Dkt. No. 21.) Defendant filed a motion to dismiss and strike as to the SAC. In light of the Court's Order Granting in Part and Denying in Part Motion by Defendant Microsoft Corporation to Dismiss and Strike Plaintiff's Claims, Or Alternatively, for a More Definite Statement (Dkt. No. 32 ("First Order")), Plaintiff amended the complaint and thereafter filed the TAC on May 30, 2012. This is the second time that the Court has analyzed the sufficiency of the contract and implied covenant claims. For the purposes of this Order, the Court focuses Plaintiff's amended allegations with respect to these claims.

Plaintiff alleges, as she did in the SAC, that her employment was governed by "an employment agreement that was partly oral, partly written and partly implied-in-fact." (TAC ¶ 113.) Specifically, Plaintiff alleges that a term of employment was a promise of "Objective Performance Based Compensation" in which Defendant "promised Plaintiff orally and in writing increases in base compensation, bonuses and stock awards based on an objective rating of Plaintiff's performance relative to [her] peers." (*Id.* ¶ 116.) Defendant communicated this promise in a number of ways. (*Id.* ¶ 117.)

1  For example, Plaintiff received offer letters for each of her positions held over eleven years of
2 employment at Microsoft, which detailed her position and the compensation packages to be received
3 based on her "achievement of the objective performance for the year consistent with [Defendant's]
4 policies." (TAC ¶ 117(a).) Plaintiff was also given written and oral Performance Requirements and
5 Objectives every year. (*Id.* ¶ 117(b).) In the first quarter of each year, Plaintiff was required to write
6 a plan with detailed objective commitments for the year against which her performance would be
7 objectively evaluated. (*Id.*) Such requirements were "communicated to Plaintiff through emails, web
8 casts and verbal conversation with Human Resources [("HR")]. For most positions, Plaintiff was
9 given a general description of assignments, objectives and commitments against which all employees
10 in the same position throughout the organization are measured." (*Id.*)

11  As part of the performance review process, during the beginning of the third quarter of each
12 fiscal year, Plaintiff was required to have a mid-year check-in with her manager to assess her progress
13 against her performance commitments for the year. (TAC ¶ 117(c).) The mid-year check-in, as it
14 was called, was "communicated to Plaintiff through emails, web casts and verbal conversation with
15 Human Resources." (*Id.*) If Plaintiff's performance needed improvement, her manager was to
16 provide her with a plan describing how to improve it. (*Id.*) Plaintiff, however, did not receive any
17 plan for improvement during her 2011 mid-year check-in. (*Id.* ¶ 117(d).) Prior to her end-of-the-year
18 performance review, Plaintiff received emails and web casts "reiterating the objective nature of the
19 performance review process and detailing how performance review ratings were tied to increases in
20 Plaintiff's compensation package." (*Id.* ¶ 117(e).)

21  Plaintiff alleges that Defendant made other promises of objective performance based
22 compensation through its conduct. Every year, Plaintiff was required to attend a presentation
23 describing the "incentive based compensation structure and how an employee's objective performance
24 was tied to employees' compensation packages." (TAC ¶ 117(f).) Defendant also had yearly
25 presentations at a "People Tour" event that stated "performance would be rated on objective criteria,
26 and that performance based compensation was 'part of the deal' of being an employee of
27 [Defendant]." (*Id.* ¶ 117(g).) While working as a manager for over nine years, Plaintiff attended
28 mandatory presentations that showed how an employee's performance was to be objectively rated by

3

1 managers. (*Id.* ¶ 117(h).) Plaintiff was regularly and verbally instructed by HR and others "to be
2 objective in rating an employee's performance, including, but not limited to: not to put emotion into
3 performance reviews, not to rate an employee's performance based on personal bias, and not to
4 consider work styles different than one's own in the review." (*Id.* ¶ 117(i).) Plaintiff also regularly
5 discussed such performance rating process with other peer managers. (*Id.* ¶ 117(j).)

Defendant further implied its promise to rate her objectively through consistent conduct and express representations. (TAC ¶ 118.) Defendant had consistently rated Plaintiff's performance and appropriately compensated her based on objective standards until her performance review by her supervisor in 2011. (*Id.* ¶ 118(a).) Defendant also made express representations, both verbal and written, that adhered to their policy of objectively rating employees. (*Id.* ¶ 118(b).) In so doing, it implied that it would adhere to the same policies with regard to Plaintiff. (*Id.*)

Another term of Plaintiff's employment was Defendant's promise of a "work environment free of bullying, harassment, discrimination, retaliation and intimidation." (TAC ¶ 119.) Defendant communicated such promises in both verbal discussions with HR representatives and writing. (*Id.* ¶ 119–120.) Specifically, Defendant communicated promises through: (1) Zero Tolerance Policies; (2) Complaint Investigation Policies that required "prompt" and "unbiased" investigations into discrimination and harassment complaints; and (3) Anti-Intimidation Policies that prohibited harassment or intimidation "for any reason." (*Id.* ¶¶ 120(a)–(c).) HR held trainings and orally assured Plaintiff that "bullying, intimidation and other forms of coercive conduct were unacceptable." (*Id.* ¶ 120(d).) HR also verbally assured Plaintiff that her complaints against her manager would be promptly and thoroughly investigated, and that appropriate steps would be taken to correct the situation. (*Id.* ¶ 120(e)–(f).) Additionally, HR made verbal and written assurances that Plaintiff would not be retaliated against for making complaints against her manager. (*Id.* ¶ 120(g).) However, Plaintiff's manager retaliated against her when she returned from sabbatical. (*Id.*)

Plaintiff alleges that Defendant breached the employment agreement by failing to rate her performance on objective standards, and instead evaluating her based on subjective bias, discriminatory reasons and/or unknown reasons. (TAC ¶¶ 122(a)–(d).) Moreover, Defendant subjected her to "abusive, demanding, intimidating bullying behavior on a regular basis." (TAC ¶

122(e).) Defendant failed to adhere to its policies and practices of promptly and thoroughly investigating her complaints, and remedying the hostile environment. (*Id.* ¶¶ 122(f)–(j).) Ultimately, Plaintiff was constructively terminated from her position. (*Id.* ¶¶ 122(k).)

As to the implied covenant claim, Plaintiff alleges that, based on her employment agreement, Defendant was required not to take any action in bad faith to deny her the compensation to which she was reasonably entitled. (TAC ¶ 127.) Plaintiff asserts that Defendant breached the implied covenant of good faith and fair dealing in a number of ways. Defendant ranked her performance based on subjective and personal animus, which denied her compensation she was entitled to under her employment agreement and ranked her lower than similarly-situated males. (TAC ¶¶ 129(a)–(b).) Defendant further adopted a subjective and discriminatory formula for downgrading performance of employees such as Plaintiff. (*Id.* ¶ 129(c).) Plaintiff alleges the denial of compensation was done in bad faith and with discriminatory motives, and that such intolerable working conditions resulted in Plaintiff's constructive termination. (*Id.* ¶¶ 129(d)–(e).)

## II. DISCUSSION

### A. Fed. R. Civ. P. 12(b)(6)

Defendant moves under Fed. R. Civ. P. 12(b)(6) and challenges the legal sufficiency of the claims alleged. "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). The pleading is construed in the light most favorable to the non-moving party and all material allegations in it are taken to be true. *Sanders v. Kennedy,* 794 F.2d 478, 481 (9th Cir. 1986). However, even under the liberal pleading standard of Rule 8(a)(2), "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555 (citing *Papasan v. Allain,* 478 U.S. 265, 286 (1986) (internal brackets and quotation marks omitted)). Hence, the Court need not assume unstated facts, nor will it draw unwarranted inferences. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing

5

court to draw on its judicial experience and common sense."); *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009); *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001) ("Nor is the court required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.").

Under *Twombly,* a plaintiff must not merely allege conduct that is conceivable but must instead allege "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. . . . When a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quoting *Twombly,* 550 U.S. at 556–57) (internal quotation marks omitted). In sum, if the facts alleged foster a reasonable inference of liability—stronger than a mere possibility—the claim survives; if they do not, the claim must be dismissed. *See Iqbal,* 556 U.S. at 678–79.

### B.     Breach of Contract (Fifth Claim)

Defendant contends that the TAC fails to state a claim for breach of contract and seeks judicial notice of six documents: (i) an "About this Handbook" section of Microsoft's Employee Handbook from 2011; (ii) an "About this Handbook" section of the Employee Handbook in effect in 2000; (iii) the "Anti-Harassment and Anti-Discrimination" section of the Employee Handbook from 2011; (iv) the "Harassment" section of the Employee Handbook from 2000; (v) the "Anti-Harassment and Anti-Discrimination Policy and Complaint Procedures—U.S. Policy" section of the "MS Policy" intranet site, which contains personnel policies and is currently in effect; and (vi) a copy of the Microsoft Employee Agreement maintained in Plaintiff's personnel file. (Mot. at 5–6; Declaration of Carolynn Howsley in Support of Motion by Defendant Microsoft Corporation to Dismiss and Strike Plaintiff's Claims ("Howsley Decl."), Exs. A–F (Dkt. No. 35-1).) With these documents (collectively referred to as "Exhibits"), Defendant contends that Plaintiff cannot state a plausible contract claim because the Employee Handbook excerpts and the MS Policy intranet site contain express disclaimers that

1 Microsoft was not entering into a contract on any of the topics discussed, including the Anti-
2 Harassment and Anti-Discrimination, Performance, and Compensation sections. (Mot. at 7.) In
3 addition to the express disclaimer that a contract was not being formed, these documents contain
4 discretionary language that allow Microsoft to change their policies. (*Id.* at 8.) Finally, Defendant
5 contends that the employment agreement contained in Plaintiff's personnel file explicitly stated that it
6 was the only contract between Microsoft and Plaintiff, and thus no other writing, representation, or
7 conduct can form a contract outside of that written agreement itself. (Mot. at 9–10.)

8 Because Defendant's Motion primarily depends upon whether the Court will take judicial
9 notice of the Exhibits, the Court will address this issue first.

### 1. Request for Judicial Notice

11 The general rule is that a court "may not consider any material beyond the pleadings in ruling
12 on a Rule 12(b)(6) motion." *United States v. Corinthian Colleges*, 655 F.3d 984, 998–999 (9th Cir.
13 2011) (citing *Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001)). A court may, however,
14 "consider unattached evidence on which the complaint 'necessarily relies' if: (1) the complaint refers
15 to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the
16 authenticity of the document." *Corinthian Colleges*, 655 F.3d at 999 (citing *Marder v. Lopez,* 450
17 F.3d 445, 448 (9th Cir. 2006) and *Lee*, 250 F.3d at 688). In addition, Fed. R. Evid. 201 allows a court
18 to take judicial notice of "matters of public record," but not facts that may be subject to a reasonable
19 dispute. *Lee*, 250 F.3d at 689–90; Fed. R. Evid. 201(b)(2) (judicial notice may be taken of facts not
20 subject to a reasonable dispute because they "can be accurately and readily determined from sources
21 whose accuracy cannot reasonably be questioned"). Taking judicial notice of "matters of public
22 record" under Fed. R. Evid. 201 and consideration of documents "necessarily relie[d]" upon in the
23 complaint are two separate exceptions to the general rule that a court may not consider material
24 beyond the pleadings on a Rule 12(b)(6) motion. *Lee*, 250 F.3d at 689–90.

25 Defendant contends that judicial notice is proper because "Plaintiff appears to rely" on the
26 Exhibits and/or they "appear to form the basis of [her] claims." (Mot. at 5–6.) Specifically, Plaintiff
27 refers to an employment agreement in the TAC, which Defendant concludes must refer to the
28 employment agreement in her personnel file. Defendant further contends that although she did not

7

1 attach documents to the TAC, Plaintiff references the Employee Handbook. (*Id.*) Defendant argues
2 that the authenticity of these documents is not contested (Reply at 1, 5, 8), and that Plaintiff
3 necessarily relies on them in the TAC.

4     In her Opposition, Plaintiff asserts that: (i) she does not rely on the handbook alone to
5 establish the promises and assurances given to her; (ii) Defendant has incorrectly deemed the
6 employment agreement in her personnel file to be Plaintiff's employment agreement with Microsoft;
7 and (iii) the proffered employment agreement must be governed by Washington law with respect to its
8 enforceability and validity. (Opp. at 6–7.) Plaintiff notes that Defendant "admits to guessing whether
9 the documents it has put forth form the basis of Plaintiff's claims" and that, as a matter of law, it
10 cannot be determined that those are the bases of Plaintiff's claims. (Opp. at 7 (referring to the
11 "appears to reply" language).) Moreover, she asserts that Fed. R. Evid. 201 is an inappropriate
12 ground for judicial notice. (Opp. at 9.)

13     The Court finds that the issue of authenticity is dispositive on the issue of judicial notice.
14 Plaintiff does not admit, nor deny, the authenticity of the Exhibits. (Opp. at 1 ("Defendant asks this
15 Court to take judicial notice and dismiss Plaintiff's claims based on a document . . . that was
16 supposedly signed by Plaintiff.").) At the hearing on this Motion, Plaintiff's counsel clarified this
17 point, stating that Plaintiff did not recall seeing or signing the agreement. Counsel also noted that, as
18 to the Employee Handbook and MS Policy, that Plaintiff had not seen the documents in the form
19 presented by Defendant as the Exhibits and could not confirm their authenticity.

20     Given the dispute regarding the Exhibits, the Court cannot take judicial notice thereof,
21 especially at this juncture. *Lee*, 250 F.3d at 688 (district court may not consider material beyond the
22 pleadings on a Rule 12(b)(6) motion without converting it to a motion for summary judgment and
23 giving the non-moving party an opportunity to respond). Further, the TAC is not specific enough to
24 warrant the Court taking judicial notice of the Exhibits, notwithstanding Plaintiff's objections.
25 Finally, Defendant has presented certain excerpts of the Employee Handbook and MS Policy as
26 Exhibits, but also noted that there are other policies on the subjects of compensation and performance
27 reviews. (Howsley Decl. ¶ 8.) Due to the action's procedural posture and the nature of the claims
28 alleged, the Court cannot determine the relevance of these additional provisions. The consideration of

8

Defendant's selective excerpts of documents would effectively convert this into a summary judgment motion and contravene the general rules on a Rule 12(b)(6) motion.

Defendant's request for judicial notice is **DENIED**. Accordingly, the Court is not properly positioned to reach the issue of enforceability or validity of the disclaimers or the employment agreement which Defendant proffered.

Defendant's arguments for dismissal of the contract claim rest entirely on the granting of the request for judicial notice. Having denied the request, the Court finds that Defendant's Motion to Dismiss on the fifth claim cannot succeed. Accordingly, the Motion to Dismiss the fifth claim for breach of contract is **DENIED**.

### 2. Defendant's Motion to Strike

Alternatively, Defendant moves to strike from the contract claim allegations regarding "contract terms that are unenforceable because they merely restate the requirements of applicable law."[1] (Mot. at 10.) Fed. R. Civ. P. 12(f) provides that the court "may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "The function of a [Rule] 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]" *Whittlestone Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (citing *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993)). Motions to strike are generally disfavored (*Colaprico v. Sun Microsystem, Inc.*, 758 F. Supp. 1335, 1339 (N.D. Cal. 1991)) and are not granted unless it is clear that the matter sought to be stricken could have no possible bearing on the subject matter of the litigation (*LeDuc v. Kentucky Cent. Life Ins. Co.,* 814 F. Supp. 820, 830 (N.D. Cal. 1992)). Consequently, when a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." *In re 2TheMart.com, Inc. Sec Lit.*, 114 F. Supp. 2d 955, 965 (C.D. Cal. 2010). In deciding whether to grant a motion to strike under Rule 12(f), the court must start with the rule's plain language and determine whether the matter at issue is: (1) an insufficient defense; (2) redundant; (3) immaterial; (4) impertinent; or (5) scandalous. *Id.* at 973–74.

---

[1] Defendant moves to strike TAC ¶¶ 10, 11, 119, 120, 121 &122(e)–(j) to the extent they relate to Plaintiff's breach of contract claim. (Mot. at 11.)

9

Here, Defendant specifically refers to the allegations that it promised to provide a work environment free of harassment, discrimination, and retaliation and to conduct throughout and unbiased investigations of complaint. (*Id.*) Citing to one case in the Northern District of California, Defendant contends that it is "well-established that a promise to conform to the law lacks consideration and is therefore unenforceable." (*Id.* at 10 (quoting *Farmearl v. Storopack, Inc*, No. C-04-02644 RMW, 2005 WL 2206696, at *9 (N.D. Cal. Sept. 12, 2005).) In *Farmearl*, the court held that FEHA required defendant to refrain from discrimination and harassment, and thus plaintiff could not predicate a breach of contract claim upon defendant's failure to do so. (Mot. at 10.) In addition, FEHA requires employers to take reasonable steps to prevent and correct discrimination, including prompt investigations of complaints. (*Id.* (citing Cal. Gov't Code § 12900 *et seq.*); *see* Reply at 10 (contending that Plaintiff gets "double-duty out of her discrimination and harassment claims by re-asserting them as breach of contract claims").) Defendant makes its motion to strike based on the allegations being legally immaterial or improper under Rule 12(f). (Mot. at 1 & 4.)

Plaintiff counters the motion to strike should be denied because Microsoft's policies were "not mere compliance with the law" and "went beyond the equal employment laws by promising its employees a work environment free from bullying, intimidation and harassment 'for any reason.'" (Opp. at 15.) Plaintiff asserts that Microsoft's obligations under the law extend only to discrimination and harassment for "protected categories, and not the broader policy Microsoft maintained" for a completely bully-, intimidation-, and harassment-free environment. (Opp. at 15–16.) Thus, Plaintiff requests that the Court deny the motion to strike because the identified paragraphs do not meet the standard of Fed. R. Civ. P. 12(f).

The Court notes Defendant moves to strike specific paragraphs "to the extent they relate to Plaintiff's breach of contract claim." (Mot. at 11.) In so stating, Defendant seems to concede that these allegations have relevance to other claims in this action. As such, it is not the case that they have "no possible bearing" on the subject matter of this litigation. *LeDuc,* 814 F. Supp. at 830. Moreover, the Court notes that *Farmearl* involved a motion for summary judgment, not a motion to dismiss. At this juncture, it would be premature for the Court to determine that the only promises

made by Defendant are encompassed within FEHA. Indeed, Plaintiff argues that Defendant has gone beyond FEHA.

For these reasons, the Court **DENIES** the motion to strike allegations regarding the fifth claim for breach of contract based on unenforceable promises.

### C. Breach of the Implied Covenant of Good Faith and Fair Dealing (Sixth Claim)

Defendant moves to dismiss this claim on the grounds that: (1) the claim for breach of the implied covenant of good faith and fair dealing cannot succeed based on the defective contract claim on which the covenant relies; and (2) the claim is "merely duplicative" of the alleged breaches in the underlying contract claim. (Mot. at 11.) The Court need not address Defendant's first argument because it has held that the contract claim will proceed. As to the second argument, Defendant contends that an implied covenant claim may not alter or vary the terms of a written contract that is the source of the covenant as a matter of law. (Mot. at 12 (citing *Guz v. Bechtel*, 24 Cal. 4th 317, 349 (2000).) If Defendant breached an alleged contract, then it contends that such breach is only of the contract claim and cannot be repeated as a basis for the implied covenant claim. (Mot. at 12.)

Plaintiff asserts that the covenant of good faith and fair dealing is implied by law in every employment contract, and that the focus of the inquiry is "whether the employer 'engaged in bad faith action, extraneous to the contract, with the motive to intentionally frustrate" the employee's enjoyment of her contract rights. (Opp. at 16.) Plaintiff asserts that her claim for breach of the implied covenant is valid because the employer/employee relationship between Plaintiff and Defendant was "fundamentally contractual." (*Id.* (citing *Foley v. Interactive Data Corp.,* 47 Cal.3d 654, 696 (1988).) Plaintiff argues that the focus should be on whether the employer engaged in bad faith, extraneous to the contract. (Opp. at 16.)

The Court agrees that the "covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purposes." *Foley v. Interactive Data Corp.*, 47 Cal.3d 654, 690 (1988). The obligations imposed by the covenant are "measured by the provisions of the particular agreement at issue." *Kuhn v. Dept. of General Services*, 22 Cal. App. 4th 1627, 1637 (Cal. Ct. App. 1994). However, "insofar as the employer's acts are directly actionable as a breach of an implied-in-fact

11

contract term, a claim that merely re-alleges that breach as a violation of the covenant is superfluous." *Guz*, 24 Cal. 4th at 352 ("Allegations that the breach was wrongful, in bad faith, arbitrary, and unfair are unavailing; there is no tort of 'bad faith breach' of an employment contract."); *see Bionghi v. Metropolitan Water Dist. of Southern California*, 70 Cal. App. 4th 1358, 1370 (Cal. Ct. App. 1999) (claim for breach of the implied covenant relying on the same acts as a contract claim in an employment context may be disregarded as duplicative); *see also Foley*, 47 Cal.3d at 699–700 (tort remedies are not available for breach of the implied covenant in an employment contract to employees who allege they have been discharged in violation of the covenant.).

Defendant allegedly breached the implied covenant by "knowingly and willfully ranking" Plaintiff's performance based on "subjective, personal animus" resulting in denying her compensation to which she was entitled. (TAC ¶ 129(a).) It also knowingly and willfully ranked her lower than males who achieved lower resulted than her, and adopted a "subjective, discriminatory formula for evaluating, ranking and downgrading the performance of employees" like Plaintiff—who meet or exceed goals assigned to them—all to the effect of denying her compensation to which she was entitled. (*Id.* ¶¶ 129(b)–(c).) Plaintiff further alleges that Defendant acted "in bad faith and with discriminatory motives to deny [her] compensation" and that it permitted the "intolerable working conditions" to constructively terminate her and deny her compensation. (*Id.* ¶¶ 129(d)–(e).) The thrust of Plaintiff's implied covenant claim is that she was denied compensation to which she was entitled due to Defendant's knowing, willful, and bad faith conduct.

Plaintiff describes at length in her contract claim how she was promised certain compensation based on objective performance ratings. (*See* TAC ¶¶ 116–122.) However, her implied covenant claim is slightly distinct, focusing on the knowing, willful, and bad faith manner in which Defendant acted to deprive her compensation to which she was entitled. (*Id.* ¶ 129.) Thus, the implied covenant claim is not wholly superfluous of the contract claim. *Guz*, 24 Cal. 4th at 352. Moreover, the *Guz* court noted that the covenant prevents a party from acting in bad faith to frustrate the contract's actual benefits. "[F]or example, the covenant might be violated if termination of an at-will employee was a mere pretext to cheat the worker out of another contract benefit to which the employee was clearly entitled, such as compensation already earned." *Id.* at 353 n.18.

12

For the foregoing reasons, the Court **DENIES** the Motion to Dismiss the sixth claim for breach of the implied covenant of good faith and fair dealing.

## II.  CONCLUSION

For the foregoing reasons, the Court **DENIES** in its entirety Defendant's Motion to Dismiss and Strike.  Defendant shall respond to the TAC within fourteen (14) days of the date of this Order.  This Order terminates Dkt. No. 35.

**IT IS SO ORDERED.**

Dated: September 13, 2012

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**